**LITTLE REID & KARZAI LLP**
Eric Little, Bar No. 169021
M. Catherine Reid, Bar No. 156358
3333 Michelson Drive, Suite 310
Irvine, CA 92612
Telephone: (949) 333-1699
Facsimile: (949) 333-1697

**Attorneys for:** Plaintiff
Hudson Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-RIVERSIDE

HUDSON INSURANCE COMPANY, a Delaware Corporation,

Plaintiff,

vs.

COLONY INSURANCE COMPANY, a Virginia Corporation,

Defendant.

Case No.:EDCV 07-01497-SGL (OPx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HUDSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

DATE: June 23, 2008
TIME: 10:00 a.m.
COURTROOM: One

**[Concurrently filed and served with Hudson's Notice of Motion and Motion for Partial Summary Judgment; Memorandum of Points and Authorities; Separate Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Jackie Hahn; Declaration of Najwa Tarzi Karzai; Appendix of Exhibits and Proposed Order]**

## TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT .............................. 1

II. SUMMARY OF FACTS .............................. 1

A. Hudson's and Colony's Mutual Insured is Sued .............................. 1

B. The *NFL* Action .............................. 2

C. The Colony Insurance Policy .............................. 4

III. SUMMARY JUDGMENT IS PROPER AS HUDSON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW .............................. 6

A. Summary Judgment Standard as Applied to an Insurer's Duty To Defend .............................. 6

B. The Parties' Respective Burdens On Summary Judgment of Colony's Duty to Defend .............................. 7

IV. HUDSON IS ENTITLED TO RECOVER THE LITIGATION COSTS IT INCURRED DEFENDING ALL AUTHENTIC IN THE *NFL* ACTION UNDER THE DOCTRINE OF EQUITABLE CONTRIBUION .............................. 8

V. THE ALLEGATIONS ASSERTED IN THE *NFL* ACTION MEET THE REQUIRED ELEMENTS FOR "ADVERTISING INJURY" COVERAGE .............................. 13

A. Colony's "Advertising Injury" Insuring Agreement .............................. 13

B. Courts Apply a Three (3) Part Test to Determine Whether Potentially Covered "Advertising Injury" is Alleged .............................. 13

1. The Three Elements are Offense, Causation, and Advertising .............................. 13

2. The "Offense" Element is Satisfied by the Allegations in the *NFL* Action .............................. 14

a. Allegations of Potentially Covered Slogan Infringement .............................. 14

b. Allegations of Potentially Covered Trade Dress Infringement ........ 15

3. The "Advertisement" Element is Satisfied ........ 18

4. The "Causation" Element is Satisfied ........ 19

C. No Exclusion Excuses Colony's Refusal to Defend ........ 21

VI. HUDSON IS ENTITLED TO PREJUDGMENT INTEREST OF 10% PER ANNUM ON THE AMOUNTS PAID ........ 20

VII. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049 (9th Cir. (Cal.) 2002) .......... 7, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .......... 6

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F. 3d 546 (6th Cir.(Mich) 2002) .......... 14

*Clicks Billiards, Inc. v. Sixshooters, Inc.* 251 F. 3d 1252 (9th Cir., 2001). .......... 17

*Discover Financial Services v. National Union Fire Ins. Co. of Pittsburgh, P.A.*, 527 F.Supp. 2d 806 (N.D. Ill. Sept 26, 2007) .......... 19

*Hyman v. Nationwide Mut. Fire. Ins. Co.*, 304 F. 3d 1179 (11th Cir., 2002) .......... 17

*Ohio Cas. Ins. Co. v. Cloud Nine, LLC*, 464 F. Supp. 2d 1161 (D. Utah 2006) .......... 19

*Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F. 2d 1176 (7th Cir. 1989) .......... 17

*Ultra Coachbuilders, Inc. v. General Security Ins. Co.*, 229 F. Supp. 2d 284 (S.D.N.Y. 2002) .......... 21

*Vision Sports, Inc. v. Melville Corp.*, 888 F. 2d 609 (9th Cir. (Cal.) 1989) .......... 17, 18

*Walt Disney Co. v. Goodtimes Home Video Corp.* 830 F. Supp. 762 (S.D. N.Y. 1993) .......... 17

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F. 3d 546 (6th Cir. (Mich) 2002) .......... 14, 15,16

## STATE CASES

*Amazon.com Intern. v.American Dynasty Surplus Lines Ins. Co.*, 120 Wash. App. 610 (2004) ........ 19

*CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598 (1986) ........ 7

*Edmondson Property Mgmt. v. Kwock*, 156 Cal. App. 4th 197 (2007) ........ 12

*ElCom Hardware, Inc. v. Fireman's Fund Ins.*, 92 Cal. App. 4th 205 (2001) ........ 14

*Esgro Cent., Inc. v. General Ins. Co.*, 20 Cal.App.3d 1054 (1971) ........ 21

*Fireman's Fund Ins. Co. v. City of Turlock*, 170 Cal. App. 3d 988 (1985), *disapproved on other grounds by Vandenberg v. Superior Ct.*, 21 Cal. 4th 815 (1999) ........ 8

*Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 65 Cal.App.4th 1279 (1988) ........ 12

*Hameid v. National Fire Ins. of Hartford*, 31 Cal. 4th 16 (2003) ........ 14

*Hartford Casualty Ins. Co. v. Mt. Hawley Ins. Co.*, 123 Cal. App. 4th 278 (2004) ........ 9, 10, 11

*Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 50 Cal. App. 4th 548 (1996) ........ 14

*Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287 (1993) ........ 7

*Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109 (1999) ........ 15

*Regan Roofing Co. v. Superior Court*,
24 Cal. App. 4th 425 (1994) .......... 7

*State Farm Fire & Cas. Co. v. Eddy*,
218 Cal. App. 3d 958 (1990).......... 7

**DOCKETED CASES**

*Foxfire, Inc. v. New Hampshire Ins. Co.*,
Nos. C-91-2940 MHP ARB, C-91-3464 MHP, 1994 WL 361815
(N.D. Cal. July 1, 1994) .......... 21

*Nelson/Weather-Rite, Inc. v. Leatherman Tool Group, Inc.*,
No. 93 C 2274, 1995 WL 669091 (N.D. Ill. Nov. 8, 1995).......... 17

**STATE STATUTES**

Cal. Civ. Code § 3287(a).......... 20, 21

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Hudson[1] is entitled to one-half of the defense costs paid by Hudson defending Hudson's and Colony's[2] mutual insured, All Authentic.[3] The *NFL* Action[4] alleged potentially covered wrongful conduct within the "advertising injury" coverage for "infringement of slogan" and "infringement of trade dress" - offenses included in Colony's policY.

But only Hudson honored its defense duty. It incurred defense expenses in the amount of $954,299.60. Under the doctrine of equitable contribution, Hudson is entitled to recover half of that amount from Colony as All Authentic's co-insurer.

By this motion, Hudson also seeks recovery of pre-judgment interest on this amount.

## II. SUMMARY OF FACTS

### A. Hudson's and Colony's Mutual Insured is Sued

All Authentic tendered its defense to both Colony and Hudson. By November 4, 2005 letter, Colony refused to defend or indemnify All Authentic claiming there was no coverage obligation. (SUF ¶13, Exhibit "3" to Hudson's Complaint)

By November 23, 2005 letter, Hudson agreed to defend All Authentic under a reservation of rights. (SUF ¶14, Exhibit "4" to Hudson's Complaint) The *NFL* Action ultimately resolved through Final Order and Consent Judgment. (SUF ¶8, Exhibit "7" to Appendix of Exhibits.)

The *NFL* Action alleged claims against All Authentic which included causes of action for trademark infringement, trademark counterfeiting, trademark dilution,

---

[1] Hudson Insurance Company. ("Hudson")

[2] Colony Insurance Company. ("Colony")

[3] All Authentic Corporation. ("All Authentic")

[4] *NFL Properties LLC v. All Authentic Corporation*, United States District Court for the Southern District Court of New York, Case No. 05 CV 8967. (The "*NFL* Action") (Statement of Undisputed Fact (SUF") ¶3, Exhibit "2" to Complaint)

unfair competition and deceptive acts and practices. (SUF ¶4, Exhibit "2" to Complaint) The claims included allegations that exposed All Authentic to liability for trade dress infringement and slogan infringement. (SUF ¶5, Exhibit "2" to Complaint) The NFL alleged that All Authentic committed these wrongful acts in various ways, including in the course of advertising and in advertisements. (SUF ¶6, Exhibit "2" to Complaint) The allegations in the *NFL* Action triggered Colony's defense obligation under the "advertising injury" provisions of the policy Colony issued to All Authentic.

### B. The *NFL* Action

As noted, the *NFL* Action alleged that All Authentic infringed the NFL's and its members' trade dress and slogans in All Authentic's advertisements, including on the internet:

> 18. Exhibit B **displays an image of a Counterfeit Jersey offered for sale on www.allauthentic.com** as a "Steel Curtain Custom Limited Edition Steelers Jersey" on the left, next to the authentic NFL Uniform Design Jersey on the right. The **Counterfeit Jersey reads "Steel Curtain"** across the back and bears the numbers of four Pittsburgh Steelers players using the same style of numbering and lettering as appears on the authentic Pittsburgh Steelers' NFL Uniform Design Jersey. The Steelers have strong common law rights in the mark "Steel Curtain" and own a state registration for the mark "Steel Curtain . . . Pittsburgh Steelers." The **Counterfeit Jersey features the same black and gold color combination and striping** as the official Pittsburgh Steelers' NFL Uniform Design Jerseys.

19. Exhibit C **displays an image of Counterfeit Jersey offered for sale on www.allauthentic.com** as "Joe Montana Signed Throwback 49ers Jersey" . . . The Counterfeit Jersey reads "Montana" across the back and bears the number "16" using the **same style of numbering and lettering as appears on the authentic San Francisco 49ers NFL Uniform Design Jerseys**. The Counterfeit Jersey features the same red and white color combination and striping as the official San Francisco 49ers NFL Uniform Design Jerseys.

20. Exhibit D displays **an image of a Counterfeit Jersey offered for sale on www.allauthentic.com** as a "Joe Klecko Throwback Tribute Jets & Patriots Style Combo Jersey" . . . The front of the Counterfeit Jersey bears the number "90" using the **same style of numbering as appears on the authentic Patriots NFL Uniform Design Jerseys**. The Counterfeit Jersey reads "Kleck" across the back and bears the number "73" using the same style of numbering and lettering as appears on the authentic New York Jets NFL Uniform Design Jerseys. The **Counterfeit Jersey features the same green and white color combination as the official New York Jets NFL Uniform Design Jerseys** on one side and the same blue and silver combination as the official New England Patriots NFL Uniform Design Jerseys on the other side.

. . . .

25. . . . the Counterfeit Jerseys are so close as to be

> identical or substantially indistinguishable from officially licensed jerseys currently sold by NFL Properties licensees
>
> . . .
>
> 26. Defendant has not been granted permission or authorization by NFL Properties, the NFL or its Member Clubs to use any NFL Marks in connection with jerseys.

SUF ¶7, Exhibit "2" to Complaint, emphasis added.

**C. The Colony Insurance Policy**

Colony issued to All Authentic a Commercial General Liability ("CGL") insurance policy effective May 14, 2005 to May 14, 2006, Policy No. GL 3005300 (the "Colony Policy"). (SUF ¶9, Exhibit "1" to Complaint) The Colony Policy's limits are $1 million per occurrence and $2 million in the aggregate. (SUF ¶10, Exhibit "1" to Complaint) The Colony Policy provides in part:

> COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY
>
> Insuring Agreement
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages . . .
>
> This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period…

> "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers. . .
>
> COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 2. Exclusions
>
> i. Infringement of Copyright, Patent, Trademark or Trade Secret
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
>
> However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan…
>
> SECTION V – DEFINITIONS
>
> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses: …
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Similar to the Colony policy, the Hudson policy also contains "advertising

injury" coverage for "infringement of ... slogan." (SUF ¶11, Exhibit "1" to Complaint) Hudson reviewed the NFL Complaint allegations and concluded that there was a potential for coverage for trade dress and slogan infringement. Hudson also recognized that All Authentic might be liable for damages based upon claims that were specifically excluded by the policy, and advised All Authentic accordingly. (SUF¶14, Exhibit "4" to Complaint) Unfortunately, Colony, unlike Hudson, did not consider the fact allegations upon which All Authentic might be found liable for trade dress or slogan infringement. Colony, instead, chose to base its coverage decision solely on the labeled causes of action, in contravention of California law.

## III. SUMMARY JUDGMENT IS PROPER AS HUDSON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A. Summary Judgment Standard as Applied to an Insurer's Duty To Defend

This Court should grant summary judgment since the pleadings, supporting papers, affidavits and admissions on file demonstrate there are no genuine issues of material fact, thus, Hudson is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56. Colony's primary obligation to defend All Authentic, and thus reimburse Hudson for one-half of the defense expenses, is particularly amenable to resolution through summary judgment, as is typically the case for coverage analysis under CGL policies such as the Colony policy.

Unless there is a dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact."). Summary adjudication is appropriate to resolve an insurance coverage dispute where there is no issue of material fact, and the

sole issue is one of law.[5] *State Farm Fire & Cas. Co. v. Eddy*, 218 Cal. App. 3d 958, 964 (1990).

### B. The Parties' Respective Burdens On Summary Judgment of Colony's Duty to Defend

Hudson only has the burden of establishing a potential for coverage; once this burden is met, Colony has the burden of establishing that there is no possibility that the claim falls within the policy's coverage. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300 (1993). Colony's burden is an extremely heavy burden: Colony is relieved of its duty to defend only if the NFL's pleadings in the *NFL* Action "'can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" *Id.* (emphasis in original).

The label given to a particular cause of action in the underlying complaint is not determinative of the duty to defend. *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 607 (1986). As held in *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. (Cal.) 2002):

> An insurer has a very broad duty to defend its insured under California law. The California Supreme Court has stated that "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or

---

[5] *Regan Roofing Co. v. Superior Court*, 24 Cal. App. 4th 425, 435 (1994) ("In the context of insurance contract law, it is well established that a duty to defend is contractual in nature (*Isaacson v. California Ins. Guarantee Assn.*, 44 Cal. 3d 775, 791 [244 Cal. Rptr. 655, 750 P.2d 297]) (1988) and determination of such a duty is a matter of law appropriate for summary adjudication. (*Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 298-301 [24 Cal. Rptr. 2d 467, 861 P.2d 1153] (1993); *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 38 [221 Cal. Rptr. 171] (1985).) Interpretation of an insurance policy is a question of law for the court. (*Ibid.*) Where such a summary adjudication of the duty to defend is made in a declaratory relief action, the entire action may be effectively terminated and summary adjudication thus achieves the policy goals of section 437c, subdivision (f).")

if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299, 24 Cal. Rptr. 2d 467, 861 P.2d 1153 (1993). "[O]nce the insured has established potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must assume its duty to defend unless and until it can conclusively refute that potential." *Id.* (emphasis added). To protect an insured's right to call on the insurer's "superior resources for the defense of third party claims . . . California courts have been consistently solicitous of insureds' expectations on this score." *Id.* at 295-96. . . . Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor. *Id.* at 299-300. . . .

Summary judgment is proper here because the issue as to whether the NFL's allegations against All Authentic potentially triggered coverage under Colony's "personal and advertising injury" policy provisions is a question of law. "[A]n analysis of the liability underlying the award determines as a matter of law the nature of the damages." *Fireman's Fund Ins. Co. v. City of Turlock*, 170 Cal. App. 3d 988, 995 (1985), *disapproved on other grounds by Vandenberg v. Superior Ct.*, 21 Cal. 4th 815, 839 (1999).

## IV. HUDSON IS ENTITLED TO RECOVER THE LITIGATION COSTS IT INCURRED DEFENDING ALL AUTHENTIC IN THE *NFL* ACTION UNDER THE DOCTRINE OF EQUITABLE CONTRIBUION

Pursuant to California law, one primary insurer may recover from another primary insurer where they insure the same insured and the same risk under principles of equitable contribution. An insurer that has been assigned its insured's

rights against another insurer may also recover under principles of equitable subrogation but may only recover that to which its insured is entitled. One California appellate court recently explained the basis for recovery under these principles.

> The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have. . . .
>
> Equitable contribution is entirely different. It is the right to recover, not from the party primarily liable for the loss, but from a co-obligor who shares such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid

> on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid [that] was equally and concurrently owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others.
>
> . . .
>
> Unlike subrogation, the right to equitable contribution exists independently of the rights of the insured. It is predicated on the commonsense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor...
>
> The different equitable principles on which contribution and subrogation are based are reflective of different underlying public policies. The aim of equitable subrogation is to place the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged, and to relieve entirely the

> insurer or surety who indemnified the loss and who in equity was not primarily liable therefor. ... On the other hand, the aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of the others. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291-1296 [77 Cal. Rptr. 2d 296], citations and fn. omitted, italics in original; see *Maryland Casualty Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, 1092 [97 Cal. Rptr. 2d 374] [equitable contribution, not subrogation, applies where construction contract does not contain indemnity provision].

*Hartford Casualty Ins. Co. v. Mt. Hawley Ins. Co.*, 123 Cal. App. 4th 278, 287-288 (2004). (Some internal quotation marks omitted.)

Hudson's right to contribution is thus separate and distinct from the assignment of All Authentic's rights against Colony. Hudson need only show that Colony owed a defense to All Authentic and that Colony did not pay for the defense but Hudson did. Thus, Hudson can recover one-half of the defense expenses it paid to defend All Authentic in order to apportion the cost of the defense between insurers owing the same obligation.

> We conclude that where two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers, without

> regard to principles of equitable subrogation. As a corollary to this principle, we hold that one insurer's settlement with the insured is not a bar to a separate action against that insurer by the other insurer or insurers for equitable contribution or indemnity.

*Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 65 Cal.App.4th 1279, 1289 (1988).

Because Hudson paid for the entire defense of All Authentic even though Colony also owed a defense duty, Hudson is entitled to recover one-half of those defense expenses.[6]

Additionally, Colony may not avoid liability by claiming that its "other insurance" clause excuses its defense duty where another primary insurer actually defends. Recently, a California appellate court explained California law on this issue. In *Edmondson Property Mgmt*, 67 Cal. Rptr. at 247-248, the Court stated:

> The modern trend is to require contribution where there is the same level of insurance for the same risk, regardless of 'other insurance' language. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1080, 124 Cal.Rptr.2d 142, 52 P.3d 79; *Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.* (1999) 75 Cal.App.4th

---

[6] *Edmondson Property Mgmt. v. Kwock*, 156 Cal. App. 4th 197, 202-203 (2007) ("The general rule is that when multiple insurance carriers insure the same insured and cover the same risk, each insurer may assert a claim against a coinsurer for equitable contribution when it has undertaken the defense or paid a liability on behalf of the insured. The theory is that the debt paid by one of the insurance carriers equally and concurrently was owed by the other by virtue of the insurance contracts and should be shared by them pro rata in proportion to their coverage of the risk. (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co., supra*, 72 Cal.App.4th at pp. 1078, 85 Cal.Rptr.2d 627.)").

> 739, 745, 89 Cal.Rptr.2d 415; see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2007) ¶¶ 8:26-8:38, pp. 8-9 to 8-14.)

Colony owes contribution to Hudson for one-half of the defense expenses paid by Hudson regardless of any "other insurance" provision.

## V. THE ALLEGATIONS ASSERTED IN THE *NFL* ACTION MEET THE REQUIRED ELEMENTS FOR "ADVERTISING INJURY" COVERAGE

### A. Colony's "Advertising Injury" Insuring Agreement

The Colony Policy's insuring agreement for "advertising injury" coverage provides:

> [Colony] will pay those sums that [All Authentic] becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages.

SUF ¶11, Exhibit "1" to Complaint.

### B. Courts Apply a Three (3) Part Test to Determine Whether Potentially Covered "Advertising Injury" is Alleged

#### 1. The Three Elements are Offense, Causation, and Advertising

There are three elements to Colony's "advertising injury" coverage. These elements are (1) offense; (2) causation; and (3) advertising. *Hameid v. National Fire Ins. of Hartford,* 31 Cal. 4th 16, 22 (2003); *ElCom Hardware, Inc. v. Fireman's Fund Ins.*, 92 Cal. App. 4th 205, 215-219 (2001) ("advertising injury" coverage for trade dress infringement); *Cincinnati Ins. Co. v. Zen Design Group, Ltd.,* 329 F. 3d 546, 553 (6th Cir.(Mich) 2002) ("advertising injury" coverage for slogan infringement).

**2. The "Offense" Element is Satisfied by the Allegations in the *NFL* Action**

Colony defines "personal and advertising injury" as, *inter alia*, "infringing upon another's copyright, trade dress or slogan in your 'advertisement'." (SUF ¶11, Exhibit "1" to Complaint) The *NFL* Action alleged the offense of slogan infringement and the offense of trade dress infringement.

These fact allegations were sufficient to trigger Colony's defense obligation as they allege trade dress and slogan infringement. All Authentic faced potential liability for such claims which are expressly covered under the Colony policy. While NFL Properties did not assert a labeled cause of action for either trade dress or slogan infringement, Colony still had a defense duty as the plaintiff's choice of causes of action to assert does not control whether an insurer owes a defense. The fact allegations asserted against the insured and the potential for liability for offenses included in coverage trigger an insurer's defense duty. *Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 50 Cal. App. 4th 548, 555 (1996) ("It is settled that an insurer must defend any action which potentially seeks damages within the coverage of the policy.").

**a. Allegations of Potentially Covered Slogan Infringement**

The *Zen Design* court found a complaint alleging infringement of the words "wearable light" constituted potentially covered "slogan infringement", stating:

> We agree with the district court's analysis and determine that summary judgment for Zen is appropriate with respect to Cincinnati's duty to defend on ASP's potential slogan infringement claim....
>
> Relying on other common definitions of slogan, "The Wearable Light," as used in the ASP advertisement also can be considered "[a] brief attention-getting phrase used

> in advertising or promotion." *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1120, 90 Cal.Rptr.2d 647, 988 P.2d 568 (1999)....
>
> ASP's assertions of ownership over the phrase "The Wearable Light" together with Zen's alleged use of the same phrase in connection with its LED flashlights are arguably allegations of slogan infringement.

*Zen Design,* 329 F. 3d at 555-557.

Similarly, the NFL's use of "Steel Curtain" is a "brief attention getting phrase used in advertising or promotion"[7]:

> The Counterfeit Jersey reads "Steel Curtain" across the back and bears the numbers of four Pittsburgh Steelers players using the same style of numbering and lettering as appears on the authentic Pittsburgh Steelers' NFL Uniform Design Jersey. The Steelers have a strong common law rights in the mark "Steel Curtain" and own a state registration for the mark "Steel Curtain . . . Pittsburgh Steelers."

SUF¶7; Exhibit "2" to Complaint, ¶ 18.

NFL's assertion of ownership over the phrase "Steel Curtain" together with All Authentic's alleged use of the same phrase in connection with its football jerseys are arguably allegations of slogan infringement. *Zen Design,* 329 F. 3d 557. As such, the NFL's allegations constitute potentially covered slogan infringement under the Colony policy.

---

[7] *Palmer v. Truck Ins. Exch.,* 21 Cal.4th 1109, 1120 (1999).

**b. Allegations of Potentially Covered Trade Dress Infringement**

The NFL's allegations regarding the design, color scheme, and total appearance of All Authentic's jerseys are allegations of trade dress, not trademark, infringement. For example, the NFL alleges:

> 20. The front of the Counterfeit Jersey bears the number "90" using the **same style of numbering as appears on the authentic Patriots NFL Uniform Design Jerseys**. The Counterfeit Jersey reads "Kleck" across the back and bears the number "73" using the same style of numbering and lettering as appears on the authentic New York Jets NFL Uniform Design Jerseys. The **Counterfeit Jersey features the same green and white color combination as the official New York Jets NFL Uniform Design Jerseys** on one side and the same blue and silver combination as the official New England Patriots NFL Uniform Design Jerseys on the other side.

SUF¶7; Exhibit "2" to Complaint.

Trade dress is consistently defined as the total image, design and appearance of a product, its packaging or labeling, including features such as size, shape, color combinations, texture or graphics.[8] By asserting that the "style of numbering" and

---

[8] *Clicks Billiards, Inc. v. Sixshooters, Inc.* 251 F. 3d 1252, 1257, 1259 (9th Cir., 2001); *Hyman v. Nationwide Mut. Fire. Ins. Co.,* 304 F. 3d 1179, 1189 (11th Cir., 2002) ("Trade dress is defined as the 'total image of a product and may include features such as size, shape, color or color combination, textures, graphics, or even particular sales techniques.'…'[T]he classic trade dress infringement action involved the packaging or labeling of goods[.]'" (citation omitted)); *id.* ("To prove a claim for trade dress infringement, the plaintiff must establish that … the infringing company's packaging, labeling, or marketing resembles closely those features of the original product."); *Walt*

"same green and white color combinations" are allegedly infringing, the NFL alleged infringement of the total image, design and appearance of the jerseys, including color combinations and graphics. These allegations constitute potentially covered trade dress.

*Vision Sports, Inc. v. Melville Corp.*, 888 F. 2d 609 (9th Cir. (Cal.) 1989) illustrates that the NFL alleged both trade dress and trademark infringement. There, a clothing manufacturer brought a trademark infringement action against its competitor, alleging that the competitor infringed its "vision street wear" logo and related logo design ("VSW logo"). The plaintiff had a registered trademark for clothing for the word "vision" in large red block letters, over the word "street" in black letters, over the word "wear" in white block letters, all against a black rectangular background. *Id.* at 611. Plaintiff's competitor began selling clothing under a "street closed" mark, which words were presented in a similar fashion to the VSW logo, i.e. block letters with the same colors superimposed over each other, against a black background. *Id.*

The district court granted the plaintiff's motion for a preliminary injunction, prohibiting the competitor from employing a trademark logo format confusingly

---

*Disney Co. v. Goodtimes Home Video Corp.*, 830 F. Supp. 762, 766 (S.D. N.Y. 1993) ("Trade dress traditionally refers to the packaging or labeling of a product[.]"); *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F. 2d 1176, 1182 (7th Cir. 1989) ("[A] product's trade dress is the overall image used to present it to its purchases; it could thus include, to give a partial list, the product's size, shape, color, graphics, packaging, and label."); *Nelson/Weather-Rite, Inc. v. Leatherman Tool Group, Inc.*, No. 93 C 2274, 1995 WL 669091, at *6 (N.D. Ill. Nov. 8, 1995)("Trade dress refers to the form in which a producer presents his brand to the market; it may include a label, a package, or even the product itself[.] 'Trade dress encompasses the total image or overall impression created by the product or its packaging.' The total image of product includes, among other things, the product's size, shape, color, graphics, packaging, and label. [T]rade dress traditionally referred to the packaging or labeling of a product [.]" (citations omitted)).

similar to the plaintiff's VSW logo. On appeal, the competitor argued that the district court erred because it misunderstood the plaintiff's allegations and consequently erroneously applied trademark law instead of trade dress law. *Id.* at 612. The appellate court disagreed, finding that the plaintiff was asserting **both** trade dress and trademark rights in its VSW logo design and that the district court did not apply an erroneous legal standard. *Id.* at 613. The *Vision Sports* court stated:

> [T]o the extent that Vision's cause of action focuses upon the look and styling of the clothing (including the fabric pattern), along with the color scheme and graphic display embodied in the VSW logo, it is a trade dress claim.

*Id.* at 613.

As in *Vision Sports*, to the extent the *NFL* Action focuses on the look and style, color scheme, and graphic display of the design of the NFL jerseys, the NFL is asserting a trade dress claim, not a trademark claim. The NFL alleges infringement of the "style of numbering" and "same green and white color combinations" as the NFL design. Because these allegations constitute allegations of trade dress infringement under *Vision Sports*, the *NFL* Action alleges potentially covered trade dress infringement.

**3. The "Advertisement" Element is Satisfied**

Colony defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about [All Authentic's] goods, products or services for the purpose of attracting customers . . . ." (SUF ¶11 , Exhibit "1" to Complaint)

All Authentic's website constitutes an "advertisement" as defined in the Colony policy. In *Ohio Cas. Ins. Co. v. Cloud Nine, LLC,* 464 F. Supp. 2d 1161, 1167 (D. Utah 2006), the court held:

> A business's website, except for the web pages concerning

> the business's contact information and history, is generally an advertisement for the business's goods, services or products. **And certainly a website would fall within the Policy's definition of "advertisement":** "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Bold added.)

Other courts agree that All Authentic's website constitutes an "advertisement" as defined in the Colony policy. In *Amazon.com Intern. v.American Dynasty Surplus Lines Ins. Co.,* 120 Wash. App. 610, 617 (2004), the court stated: "Amazon's website exists for the purpose of promoting products for sale to the public. This is advertising." Following *Amazon.com*, the court in *Discover Financial Services v. National Union Fire Ins. Co. of Pittsburgh, P.A.,* 527 F.Supp. 2d 806, 826 (N.D. Ill. Sept 26, 2007) agreed that a website constitutes an "advertisement" stating: "In that case, Amazon's website existed for the purpose of promoting products for sale, which undoubtedly amounted to advertising."

Based on the allegations in the *NFL* Action, All Authentic faced potentially covered liability for trade dress infringement and slogan infringement in All Authentic's advertisements, thereby triggering Colony's defense duty. Those allegations include claims that the goods advertised on All Authentic's website looked like the jerseys of various NFL teams and that some of the phrases used to advertise All Authentic's products were phrases that the NFL teams owned exclusive rights to use. (SUF ¶¶4-7, Exhibit "2" to Complaint)

**4. The "Causation" Element is Satisfied**

The policy merely requires a causal connection between the "personal and advertising injury" offenses of slogan infringement or trade dress infringement and

All Authentic's business: "This insurance applies to "personal and advertising injury" caused by an offense arising out of [All Authentic's] business..." (SUF ¶11, Exhibit "1" to Complaint) The *NFL* Action broadly alleges a business dispute. As a result, the causation element is met.

### C. No Exclusion Excuses Colony's Refusal to Defend

The Colony Policy excludes "[p]ersonal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. This exclusion does not apply to infringement in All Authentic's "advertisement" of trade dress or slogan, as those claims are expressly excepted from the exclusion. (SUF ¶11, Exhibit "1" to Complaint) Based on the allegations in the *NFL* Action, All Authentic faced potentially covered liability for trade dress infringement and slogan infringement in All Authentic's advertisement. No exclusion excuses Colony's duty to defend All Authentic in the *NFL* Action.

## VI. HUDSON IS ENTITLED TO PREJUDGMENT INTEREST OF 10% PER ANNUM ON THE AMOUNTS PAID

California Civil Code § 3287 governs the awarding of prejudgment interest. Prejudgment interest can be awarded to "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day . . . ." Prejudgment interest awards are conferred under a separate paragraph when the damages are ascertainable. *Foxfire, Inc. v. New Hampshire Ins. Co.*, Nos. C-91-2940 MHP ARB, C-91-3464 MHP, 1994 WL 361815, at *5 (N.D. Cal. July 1, 1994) ("Damages are considered certain or capable of being made certain when 'there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage.' *Esgro Cent., Inc. v. General Ins. Co.*, 20 Cal.App.3d 1054, 1060 (1971).").

The date on which Hudson's payment of All Authentic's defense expenses became vested for the purpose of calculating prejudgment interest under California Civil Code § 3827(a) is the date on which payment was made to counsel for All Authentic by Hudson. *Ultra Coachbuilders, Inc. v. General Security Ins. Co.*, 229 F. Supp. 2d 284, 288 (S.D.N.Y. 2002) (holding prejudgment interest ran from date of invoice). Hudson paid All Authentic's defense expenses on March 6, 2006, July 12, 2006, October 12, 2006 and December 14, 2006. (SUF ¶15, Exhibit "7" to Appendix of Exhibits) If Colony had not breached its duty to defend, it would have paid defense expenses on those dates, if not earlier, since it would have been in receipt of the invoices from counsel defending All Authentic in the *NFL* Action.

Colony was on notice from the date it denied a defense that All Authentic would continue to incur defense costs through its independent counsel. Here, where Hudson paid monies that should have been paid by Colony based upon Colony's duty to defend and the date of payment is certain, Hudson is entitled to reimbursement of one-half of the defense expenses paid plus prejudgment interest on that amount from the date certain. At the time of the hearing of this motion, Hudson will be owed the $477,149.80 principal plus prejudgment interest in the amount of $87,225.75, calculated through June 23, 2008, the date of Hearing on the Motion for Partial Summary Judgment, for a total of $564,375.55 (SUF ¶¶16-19, Exhibit "8" to Appendix of Exhibits). Hudson continues to accrue prejudgment interest in the amount of $261.45 per day. (SUF ¶20, Exhibit "8" to Appendix of Exhibits)

## VII. CONCLUSION

For the foregoing reasons, Hudson respectfully requests that this court enter partial summary judgment in Hudson's favor.

///

///

///

DATED: May 20, 2008

Eric R. Little, Esq.
M. Catherine Reid, Esq.
LITTLE REID & KARZAI LLP
Attorneys for Plaintiff Hudson Insurance Company