**LITTLE REID & KARZAI LLP**
Eric Little, Bar No. 169021
M. Catherine Reid, Bar No. 156358
3333 Michelson Drive, Suite 310
Irvine, CA 92612
Telephone: (949) 333-1699
Facsimile: (949) 333-1697

**Attorneys for:** Plaintiff
Hudson Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-RIVERSIDE

HUDSON INSURANCE COMPANY, a Delaware Corporation,

Plaintiff,

vs.

COLONY INSURANCE COMPANY, a Virginia Corporation,

Defendant.

Case No.:EDCV 07-01497-SGL (OPx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COLONY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. SUMMARY OF FACTS .......... 2

III. COLONY OWED ALL AUTHENTIC A DEFENSE BECAUSE THE FACTS ALLEGED BY THE NFL TRIGGERED POTENTIAL COVERAGE .......... 5

A. Colony's Defense Duty Was Triggered by Fact Allegations Not Labeled Causes of Action .......... 5

B. The NFL Alleged Claims of Trade Dress and Slogan Infringement .......... 7

1. Trade Dress Involves the Overall Appearance of a Product .......... 7

2. NFL Alleged Slogan Infringement .......... 10

C. Colony's Defense Duty Was Triggered by the Allegations of Trade Dress and Slogan Infringement Because Colony Cannot Show That All Authentic Had No Potential Liability for Trade Dress or Slogan Infringement .......... 13

D. Hudson Does Not Speculate About Facts .......... 13

E. Colony's Speculation Cases are Inapposite .......... 15

IV. NO EXCLUSIONS ELIMINATE COLONY'S DEFENSE DUTY .......... 18

A. Colony Bears the Burden of Proving Exclusions Apply .......... 18

B. The Intellectual Property Exclusion Does Not Eliminate Colony's Defense Duty .......... 18

C. The First Publication Exclusion Does Not Eliminate Colony's Defense Duty .......... 20

V. HUDSON IS ENTITLED TO CONTRIBUTION FROM COLONY .......... 23

VI. COLONY DOES NOT DISPUTE HUDSON'S ENTITLEMENT TO PREJUDGMENT INTEREST .......... 23

VII. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*,
781 F.2d 604 (7th Cir. (Wis.)1986) .......... 6

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.*,
329 F.3d 546 (6th Cir. (Mich.) 2003) .......... 11,12

*Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*,
504 F.Supp.2d 803 (N.D.Cal. 2007) .......... 14,15

*Taco Bell Corp. v. Continental Cas. Co.*,
388 F.3d 1069 (7th Cir. (Ill.) 2004) .......... 22

## STATE CASES

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*,
100 Cal.App.4th 1017 (2002) .......... 18,20,21

*Buss v. Superior Court*,
16 Cal.4th 35 (1997) .......... 21

*El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*,
92 Cal.App.4th 205 (2001) .......... 8,9,10

*Fireman's Fund Ins. Co. v. Maryland Casualty Co.*,
65 Cal.App.4th 1279 (1988) .......... 23

*Gunderson v. Fire Ins. Exchange*,
37 Cal.App.4th 1106 (1995) .......... 15,16,17

*Hurley Construction Co. v. State Farm Fire & Casualty Co.*,
10 Cal.App.4th 533 (1992) .......... 16,17

*Low v. Golden Eagle Ins. Co.*,
99 Cal.App.4th 109 (2002) .......... 13,17

*Montrose Chemical Corp. v. Superior Court*,
6 Cal.4th 287 (1993) ....................5,14

*Palmer v. Truck Ins. Exchange*,
21 Cal.4th 1109 (1999) ....................11

*Ringler Associates Inc. v. Maryland Cas. Co.*,
80 Cal.App.4th 1165 (2000) ....................21,22

*Swain v. California Cas. Ins. Co.*,
99 Cal.App.4th 1 (2002) ....................7,17

*Westoil Terminals Co. v. Industrial Indem. Co.*,
110 Cal.App.4th 139 (2003) ....................16,17

**DOCKETED CASES**

*Royal Indem. Co. v. Hartford Ins. Co. of Midwest*,
No. B196406, 2008 WL 2009747 (Cal.App. 2nd Dist. May 12, 2008) ....................24

## I. INTRODUCTION

Hudson Insurance Company ("Hudson") submits this memorandum of points and authorities in Opposition to Colony Insurance Company's ("Colony") Motion for Partial Summary Judgment ("Colony MPSJ"). Hudson's Opposition is based on the fact that Colony owed a defense to All Authentic Corporation in the lawsuit styled *NFL Properties LLC v. All Authentic Corporation*, United States District Court for the Southern District of New York, Case No. 05 CV 8967 ("*NFL* Action"). (Hudson Statement of Undisputed Fact filed in support of its Motion for Partial Summary Judgment ("SUF") ¶ 3) Colony did not defend All Authentic but Hudson did. Hudson is entitled to damages from Colony for equitable contribution because Hudson paid amounts Colony owed. Hudson is also entitled to prejudgment interest on the amounts owed by Colony and paid by Hudson.

## II. SUMMARY OF FACTS

All Authentic was sued by the NFL and tendered the defense of the action to Hudson and Colony, which defense Colony denied on November 4, 2005. (SUF ¶ 13) Hudson agreed to defend All Authentic on November 23, 2005. (SUF ¶ 14) The NFL alleged causes of action as stated by Colony, under the Lanham Act, New York law and common law. The fact allegations pled by the NFL to support the labeled causes of action included claims that exposed All Authentic to possible liability for trade dress and slogan infringement. (SUF ¶ 5)

The NFL complaint included allegations that All Authentic infringed the NFL's and its members' trade dress and slogans in All Authentic's advertisements, including on the internet. Specifically, the NFL alleged:

> 18. Exhibit B **displays an image of a Counterfeit Jersey offered for sale on www.allauthentic.com** as a "Steel Curtain Custom Limited Edition Steelers Jersey" on the left, next to the authentic NFL Uniform Design Jersey on the right. The

**Counterfeit Jersey reads "Steel Curtain"** across the back and bears the numbers of four Pittsburgh Steelers players using the same style of numbering and lettering as appears on the authentic Pittsburgh Steelers' NFL Uniform Design Jersey. The Steelers have a strong common law rights in the mark "Steel Curtain" and own a state registration for the mark "Steel Curtain . . . Pittsburgh Steelers." The **Counterfeit Jersey features the same black and gold color combination and striping** as the official Pittsburgh Steelers' NFL Uniform Design Jerseys.

19. Exhibit C **displays an image of Counterfeit Jersey offered for sale on www.allauthentic.com** as "Joe Montana Signed Throwback 49ers Jersey" . . . The Counterfeit Jersey reads "Montana" across the back and bears the number "16" using the **same style of numbering and lettering as appears on the authentic San Francisco 49ers NFL Uniform Design Jerseys**. The Counterfeit Jersey features the same red and white color combination and striping as the official San Francisco 49ers NFL Uniform Design Jerseys.

20. Exhibit D displays **an image of a Counterfeit Jersey offered for sale on www.allauthentic.com** as a "Joe Klecko Throwback Tribute Jets & Patriots Style Combo Jersey" . . . The front of the Counterfeit Jersey bears the number "90" using the **same style of numbering as appears on the authentic Patriots NFL Uniform Design Jerseys**. The Counterfeit Jersey reads "Kleck" across the back and bears the number "73" using the same style of numbering and

> lettering as appears on the authentic New York Jets NFL Uniform Design Jerseys. The **Counterfeit Jersey features the same green and white color combination as the official New York Jets NFL Uniform Design Jerseys** on one side and the same blue and silver combination as the official New England Patriots NFL Uniform Design Jerseys on the other side.
>
> . . . .
>
> 25. . . . the Counterfeit Jerseys are so close as to be identical or substantially indistinguishable from officially licensed jerseys currently sold by NFL Properties licensees . . .
>
> 26. Defendant has not been granted permission or authorization by NFL Properties, the NFL or its Member Clubs to use any NFL Marks in connection with jerseys.

SUF ¶ 7, emphasis added.

Colony agreed to defend All Authentic in actions where damages were sought because of "personal and advertising injury" which includes the offense of "infringing upon another's copyright, trade dress or slogan in your 'advertisement.' " (SUF ¶ 11) Although the Colony policy contains an intellectual property exclusion, the offense of infringement of trade dress or slogan in the insured's advertisement is excepted from application of that exclusion. (SUF ¶ 11) Based on the allegations in the NFL complaint and the policy terms, Colony owed a defense to All Authentic.

Because Colony failed and refused to defend All Authentic, Hudson paid for the entirety of All Authentic's defense – an amount Colony owed equally. Hudson brought this action to obtain reimbursement from Colony for the amount paid by Hudson that should have been paid by Colony. Colony owes Hudson $477,149.80 in principal plus prejudgment interest in the amount of $87,225.75 through June 23,

2008 with interest accruing at $261.45 per day. (SUF ¶¶ 17, 18 and 20)

## III. COLONY OWED ALL AUTHENTIC A DEFENSE BECAUSE THE FACTS ALLEGED BY THE NFL TRIGGERED POTENTIAL COVERAGE

### A. Colony's Defense Duty Was Triggered by Fact Allegations Not Labeled Causes of Action

California law has long held that an insurer's defense duty is determined by reviewing the facts pled in the complaint and any extrinsic evidence available to the insurer and comparing the allegations and evidence with the policy to see if there is a possibility the insured may be liable for damages covered by the policy. The California Supreme Court explained in *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993):

> Recently we had occasion to restate the familiar principles governing adjudication of the insurer's duty to defend. In *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076 [17 Cal.Rptr.2d 210, 846 P.2d 792] (*Horace Mann*), we observed: "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray v. Zurich Insurance Co.* [*supra*, 65 Cal.2d 263 (*Gray*)]. As we said in *Gray*, 'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' (*Id.* at p. 275, italics in original.) Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]" (*Horace Mann, supra*, 4 Cal.4th at p. 1081.)
>
> "The determination whether the insurer owes a duty to defend

> usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. (*Gray*, supra, 65 Cal.2d at p. 276.)" (*Horace Mann, supra*, 4 Cal.4th at p. 1081.) As one Court of Appeal has put it, "[f]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. [Citation.] Hence, the duty 'may exist even where coverage is in doubt and ultimately does not develop.' [Citation.]" (*Saylin v. California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 263 [224 Cal.Rptr. 493].)

Here, Colony consistently refers to the labeled causes of action asserted by the NFL in arguing that it had no defense duty. Not only does Colony apply the wrong standard in determining its defense duty, it also misconstrues the claims that are allowed under the Lanham Act, which does not mention trademark except to allow a remedy for trademark infringement as a form of unfair competition. *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 608 (7th Cir.1986)( "[S]ection 43(a) of the Lanham Act is not limited to trademark infringement. In fact it does not mention trademarks. It provides a remedy for trademark infringement only because that is a type of unfair competition, and it provides a remedy for other types as well."). Ironically, this misunderstanding regarding what constitutes trade dress infringement and the available remedy leads Colony to concede that "images of the All Authentic jerseys in comparison with the NFL's official jerseys were attached as exhibits to the complaint, together with written descriptions of the similarities between the two." (Colony MPSJ at 2)

Colony then agrees that the NFL alleged that All Authentic's products were so close as to be identical to the NFL's trademarked jerseys. (Colony MPSJ at 2) The fact that the NFL claimed trademark rights in the jerseys is not the deciding factor in determining Colony's defense duty. The question Colony failed to answer, both in its denial and in its motion for partial summary judgment, is whether the facts alleged by the NFL might result in All Authentic being liable for a covered offense – trade dress or slogan infringement in All Authentic's advertisements. *Swain v. California Cas. Ins. Co.*, 99 Cal.App.4th 1, 8 (2002)("coverage turns not on 'the technical legal cause of action pleaded by the third party' but on the '*facts* alleged in the underlying complaint' or otherwise known to the insurer. ( *Barnett v. Fireman's Fund Ins. Co., supra*, 90 Cal.App.4th at p. 510, italics added.)."). Here, Colony admits that the NFL complaint includes fact allegations that trigger potential liability for trade dress or slogan infringement.

**B. The NFL Alleged Claims of Trade Dress and Slogan Infringement**

**1. Trade Dress Involves the Overall Appearance of a Product**

The NFL Complaint alleged that All Authentic advertised, on the internet, its products which were virtually identical in appearance to the allegedly protected products of the NFL and Colony admits this. (SUF ¶ 6 and Colony MPSJ at 2) One California appellate court, in determining an insurer's defense duty in a case where the insured advertised its products which were virtually identical to certain products of its competitor and for which the competitor owned patent rights, explained what trade dress is.

> "'The "trade dress" of a product is essentially its total image and overall appearance.' " (*Two Pesos, Inc. v. Taco Cabana, Inc.* (1992) 505 U.S. 763, 764, 112 S.Ct. 2753, 120 L.Ed.2d 615, fn. 1 (*Two Pesos*).) It "'involves the total image of a product and may include features such as size, shape, color or color combinations, texture,

> graphics, or even particular sales techniques.' [Citations.]" (*Peerless Lighting Corp. v. American Motorists Ins. Co.* (2000) 82 Cal.App.4th 995, 1002, 98 Cal.Rptr.2d 753, fn. 1 (*Peerless*).).

*El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal.App.4th 205, 208 n.1 (2001).

The *El-Com* court further explained that other courts have found that there is little difference between trademark and trade dress, particularly in light of the remedy for unfair competition provided by the Lanham Act.

> The relationship between trademark and trade dress is discussed in Restatement Third of Unfair Competition. "The law of trademarks deals primarily with designations consisting of words or other symbols used to indicate the source of goods or services. However, the manner in which the goods or services are presented to prospective purchasers, or the physical features of the product itself, may also serve as an indication of source. Source significance may attach, for example, to the overall appearance of a product ... or to some specific element or aspect of that appearance. The appearance [i.e., the trade dress] then functions as a trademark, distinguishing the goods ... of one seller from those of others." (Rest.3d Unfair Competition, § 16, com. *a*, p. 157.)
>
> Federal courts have held that, in the context of a claimed infringement, there is "probably no substantive difference between" trademark and trade dress. (*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.* (7th Cir.1986) 781 F.2d 604, 608 (*Blau*), cited with approval in *Aloha Pacific, Inc. v. California Ins. Guarantee Assn.* (2000) 79 Cal.App.4th 297, 320, 93 Cal.Rptr.2d 148 (*Aloha Pacific*).) ". . .'Trade dress,' a commonly used term in the law of unfair

> competition, denotes the form in which a producer presents his brand to the market ... If a seller adopts a trade dress confusingly similar to a competitor's, this is unfair competition actionable under section 43(a).... [¶] Because [the Lanham Act] is not limited to trademark infringement and in any event protects unregistered (common law) trademarks as well as federally registered trademarks, courts have generally not thought it important whether trade dress is a form of trademark; but it is ...” ( *Blau, supra*, 781 F.2d at p. 608.)
>
> The United States Supreme Court echoed *Blau's* reasoning in *Two Pesos, supra*, 505 U.S. at page 773, 112 S.Ct. 2753. It held that if the trade dress for which an entity seeks protection under section 43(a) of the Lanham Act is inherently distinctive, it is capable of identifying products as coming from a specific source. “This is the rule generally applicable to trademarks, and the protection of trademarks and trade dress under § 43(a) serves the same statutory purpose of preventing deception and unfair competition. There is no persuasive reason to apply different analysis to the two.” (*Two Pesos, supra*, 505 U.S. at p. 773, 112 S.Ct. 2753.)

*Id.* at 214-215.

Thus, while it is true that the NFL alleged it owned trademark rights to the image and appearance of its member clubs' jerseys, those allegations also include a claim for trade dress infringement. Colony agreed to defend All Authentic in suits seeking damages for trade dress infringement in All Authentic's advertisement. (SUF ¶ 11) Colony does not dispute that All Authentic is accused of infringing in its advertisement. Colony improperly relies on the labels the NFL attached to its claims instead of deciding if the facts alleged could result in All Authentic being liable for

trade dress infringement in its advertisements.

Colony provides no authority that precludes a trademark owner from also asserting a trade dress infringement claim. In fact, as the cases cited by the *El-Com* court show, trade dress and trademark are substantially identical and the Lanham Act provides a remedy for both. The NFL sought relief under the Lanham Act, so the claims involving the allegedly infringing appearance and image of All Authentic's products advertised on its website were claims for trade dress infringement in All Authentic's advertisements. These fact allegations triggered Colony's defense duty.

**2. NFL Alleged Slogan Infringement**

The NFL also claimed that All Authentic used slogans that belonged to others in its advertisements. (SUF ¶ 7) Colony's assertion that the NFL did not use the word "slogan" in its complaint is irrelevant. As discussed above, the facts alleged determine Colony's defense duty not the labels attached by the NFL. The NFL alleged All Authentic's use of "Steel Curtain" violated common law rights allegedly held by one of the member clubs. (SUF ¶ 7) This allegation is separate and distinct from the allegations regarding alleged infringement of the appearance of the jerseys. Clearly, the NFL believed "Steel Curtain" was a phrase which it alone could use to advertise its products and that All Authentic improperly used the phrase in its advertisements. This is slogan infringement.

> A slogan is "a brief attention-getting *phrase* used in advertising or promotion" (Webster's, *supra*, at p. 1105, italics added) or "[a] *phrase* used repeatedly, as in promotion" (Am. Heritage College Dict., *supra*, at p. 1282, italics added). Thus, the infringing use of a trademark that is merely a word in a phrase used as a slogan is not the same as the infringing use of a slogan. (See *Houston General Ins. Co. v. BSM Corp.* (N.D.Ill. Apr. 14, 1993, No. 92-C-6516) 1993 U.S. Dist. LEXIS 4725 at p. *18 [the name "IBM" is not a slogan].)

> While there may be instances where the name of a business, product or service, by itself, is also used as a slogan, the name "Valencia" was not.

*Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 1120 (1999).

In *Palmer*, the insurer defended the case in a timely manner, thus the question in that case was whether the damages were actually covered by the insurance policy, not whether they were possibly covered. *Id.* at 1114. And, slogan infringement, while alleged in the complaint, was not a damage for which the jury found Palmer liable. *Id.* at 1120. It appears that the insurer in *Palmer* understood its insured faced potential liability for slogan infringement and thus defended Palmer. The insurer did not have to indemnify Palmer on the slogan infringement claim because the jury did not find liability for wrongful use of the slogan at issue. *Id.* at 1120, n.9.

Here, Colony again misconstrues its defense duty. Colony seems to claim that a slogan cannot also be a trademark and, since the NFL asserts rights in the phrase "Steel Curtain," it cannot be a slogan. (Colony MPSJ at 13)("the term 'Steel Curtain' is merely a trademark, and is not itself a slogan."). Again, Colony must determine its defense duty based upon potential liability of its insured, even if the claim is groundless, false or fraudulent. *Montrose*, 6 Cal. 4th at 298. (There is a "well-established principle that the insurer may not decline to defend a suit merely because it is devoid of merit."). Even if Colony were correct that the claim was groundless, Colony owed a defense because the NFL alleged facts claiming All Authentic infringed a slogan in its advertisement and the Colony policy provides coverage for such claim.

A recent Sixth Circuit decision is instructive. In *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 550 (6th Cir. (Mich.) 2003)(citations omitted), the underlying plaintiff, ASP, "asserted that it marketed and advertised its LED handheld flashlights using the widely-recognized trademarks 'WEARABLE LIGHT' and

'SAPPHIRE.' ASP not only claimed that Zen and others infringed on these trademarks but also asserted that Zen copied the shape and trade dress of its handheld flashlights in order to capitalize on ASP's name and business good will." In finding that the insurer owed a defense for the claim of slogan infringement, the Court rejected the insurer's assertion that ASP never called "WEARABLE LIGHT" a slogan. *Id.*at 554-555.

The *Zen Design* Court first looked to the policy and finding the policy did not define "slogan" resorted to other sources.

> Slogan is defined in the dictionary as a 'distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase.' Random House Unabridged Dictionary 1800 (2d ed.1993). 'Although in the proper context ... a slogan[ ] can serve as a trademark ... [a] slogan is certainly not by definition a trademark.' *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 342 (4th Cir.2001).

*Id.* at 556.

The *Zen Design* Court ruled that "The Wearable Light" was a slogan that ASP claimed Zen Design infringed in its advertising, even under the definition adopted in *Palmer.*

> "The Wearable Light" can easily be construed as a "catchword or catch phrase" used by the manufacturer to promote its product. See Random House Unabridged Dictionary 1800 (2d ed.1993). Relying on other common definitions of slogan, "The Wearable Light," as used in the ASP advertisement also can be considered "[a] brief attention-getting phrase used in advertising or promotion." *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1120, 90 Cal.Rptr.2d 647, 988 P.2d 568 (1999).

> ASP's assertions of ownership over the phrase "The Wearable Light" together with Zen's alleged use of the same phrase in connection with its LED flashlights are arguably allegations of slogan infringement.

*Id.* at 556-557. Similarly here, the NFL claims trademark rights in "Steel Curtain" as a catch phrase or brief attention-getting phrase used to promote jerseys affiliated with the Pittsburgh Steelers which the NFL claims All Authentic infringed.

**C. Colony's Defense Duty Was Triggered by the Allegations of Trade Dress and Slogan Infringement Because Colony Cannot Show That All Authentic Had No Potential Liability for Trade Dress or Slogan Infringement**

In *Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 113 (2002), the court stated:

> Indeed, as the California high court has succinctly put it, the duty to defend is excused only where 'the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.' (*Gray v. Zurich Insurance Co., supra*, 65 Cal.2d 263 at p. 276, fn. 15.) In other words, 'the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot.' (*Montrose, supra*, 6 Cal.4th at p. 300, italics omitted.).

Hudson has shown that All Authentic might be liable for trade dress and slogan infringement and Colony has not proven that it could not be liable. Thus Colony owed a defense to All Authentic along with Hudson.

**D. Hudson Does Not Speculate About Facts**

Colony incorrectly claims that Hudson's complaint is based on speculation about what the NFL might have pled. (Colony MPSJ at 11-12 and 14) Hudson

relies entirely on the fact allegations asserted in the NFL complaint. As discussed above, it is Colony that misapplies California coverage law by allowing the labeled cause of action to control its defense duty assessment.

Recently, a decision from the District Court for the Northern District of California explained that, in a case where some extrinsic evidence suggested the underlying plaintiff might have a defamation claim, the evidence had to relate to the claims asserted in the complaint. *Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*, 504 F.Supp.2d 803, 811 (N.D.Cal. 2007)(As to the principal regarding "the insurer's duty to defend whenever there is the "possibility" or "potential" for coverage, the decisions make clear that this concept, too, is restricted to the nature of the lawsuit actually asserted by the third party.").

Issues of speculation almost invariably arise when the insured provides extrinsic evidence to show that the insurer has a duty to defend. When the insured's evidence does not relate to a claim made in the complaint, courts find that the insured is speculating.

> [T]he cases make it clear that extrinsic evidence is sufficient to compel an insurer to defend only when the evidence pertains to claims actually asserted by the third party. *See, e.g., Horace Mann*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (stating that extrinsic facts "give rise to a duty to defend when they reveal a possibility that the *claim* may be covered by the policy" (emphasis added)); *Gray*, 65 Cal.2d at 276-77, 54 Cal.Rptr. 104, 419 P.2d 168 (stating that an insurer's duty to defend is "fixed by the facts which the insurer learns from the complaint, the insured, or other sources," and holding that the insurer had a duty to defend because the *facts pled in the complaint* would have supported alternate, covered claims, notwithstanding "the theory of recovery" actually advanced

> by the third party); *El-Com Hardware*, 92 Cal.App.4th at 217, 111 Cal.Rptr.2d 670 (stating that "extrinsic facts known to the insurer can generate a duty to defend" when "they reveal a possibility the policy *may cover the claim*" ).

*Id.* Here, Hudson does not present any extrinsic evidence that would qualify as speculation. To the contrary, Hudson properly relies exclusively on the facts alleged in the NFL complaint while Colony improperly relies on the label placed on the cause of action. Not once has Colony evaluated its defense duty by appropriately assessing All Authentic's potential liability. There is no need to look beyond the NFL complaint allegations to see that the NFL alleged facts upon which All Authentic could be held liable for trade dress and slogan infringement in its advertisement.

**E. Colony's Speculation Cases are Inapposite**

In *Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1106, 1114 (1995), the court found that the insured misconstrued when extrinsic facts trigger a defense duty.

> Thus, the issues here are what facts respondent knew at the time appellants tendered the defense of the Ferrando lawsuit, both from the allegations on the face of the third party complaint, and from extrinsic information available to it at the time; and whether these known facts created a potential for coverage under the terms of the Policy.

The court ruled that the insured's claim that the Ferrando's could have alleged property damage was incorrect for several reasons including the fact that Ferrando could not allege facts cited by the insured because that would have negated her claim requiring abandonment of the property by the insured. The court also found that the insured was not owed a defense because, even if property damage was alleged, the extrinsic evidence regarding these facts was not provided to the insurer until the

coverage suit was initiated. *Id.* at 1116-1117. Here, Hudson only relies on facts alleged in the NFL complaint and not on extraneous facts.

Similarly, in *Hurley Construction Co. v. State Farm Fire & Casualty Co.*, 10 Cal.App.4th 533, 538 (1992), the insured did not rely on the facts alleged in the complaint. The insured attempted to establish a defense duty by having its counsel opine on possible amendments to the complaint.

> The Fireman's Fund complaint, on its face, alleged no facts showing a potential for coverage. The extraneous "facts" regarding potential liability came from Hurley's counsel who speculated about how Fireman's Fund might amend its complaint at some future date. Hurley, however, misconstrued the concept of "potential liability" as defined by the policy. "We look to the nature and kind of risk covered by the policy as a limitation upon the duty to defend ...." (*Gray v. Zurich Insurance Co.*, supra, 65 Cal.2d at p. 275, see also *Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278].)
>
> Our Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third party is not the arbiter of the policy's coverage. (*Gray v. Zurich Insurance Co.*, supra, 65 Cal.2d at p. 276; see also *Fire Ins. Exchange v. Jiminez* (1986) 184 Cal.App.3d 437, 443, fn. 2 [229 Cal.Rptr. 83].) A corollary to this rule is that the insured may not speculate about unpled third party claims to manufacture coverage.

Again, Hudson makes no such attempts to speculate.

The *Westoil Terminals Co. v. Industrial Indem. Co.*, 110 Cal.App.4th 139, 154 (2003) case involved an insured that did not operate a facility when the insurer's policy was effective and did not involve speculation.

> Second, there is no extrinsic evidence that Coastal sought damages for Westoil's negligent conduct during the policy period, which would have given rise to a potential for coverage and a corresponding duty to defend. Coastal, not Westoil, was operating the facility during the time the Industrial policy was effective. There is no evidence that Westoil was engaged in any negligent conduct during the relevant time period, giving rise to an indemnity claim by Coastal.

Colony's policy was in effect when at least some of All Authentic's allegedly wrongful conduct took place. Thus *Westoil Terminals* is distinguishable from the present case.

Colony relies on other cases that cite to *Gunderson* in finding that an insurer does not owe a defense where the facts alleged or extrinsic evidence known to the insurer do not show a potential for coverage. *Swain*, 99 Cal.App.4th at 8. ("The undisputed facts noted above establish, at a minimum, that no potential for a claim based on anything other than express, intentional eviction was known or knowable to CCIC at the time of tender, or indeed at any other relevant time."). The court in *Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 113 -114 (2002) relied on both *Gunderson* and *Hurley* in determining that the insurer did not owe a defense.

> We think these latter precedents are in point in the circumstances presented on this record. As noted, ante, the Perez complaint is not only couched overwhelmingly in class action terms, but the named plaintiff expressly disclaims any interest in seeking recovery of damages for her alleged personal injuries, despite that fact that such an allegation is required to trigger coverage and a related duty to defend under the policy.

Contrary to all of the cases cited by Colony to support its argument that

Hudson is speculating, the allegations in the *NFL* Action include facts that show All Authentic was potentially liable for trade dress and slogan infringement in its advertisements. Neither All Authentic or Hudson rely on evidence extrinsic to the NFL complaint in establishing the potential for coverage. The speculation cases require that the defense be determined by facts outside the pleadings or in addition to those known to the insurer. Hudson relies exclusively on the allegations in the NFL complaint to establish Colony's defense duty, making Colony's cases inapplicable.

## IV. NO EXCLUSIONS ELIMINATE COLONY'S DEFENSE DUTY

### A. Colony Bears the Burden of Proving Exclusions Apply

"An insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1039 (2002). Colony asserts that it does not owe a defense based upon application of its intellectual property and first publication exclusions. Colony has provided no evidence, let alone conclusive evidence, that these exclusions apply in all possible worlds. In fact, the exclusions do not apply at all because there are claims asserted by the NFL that are carved out of the intellectual property exclusion and the allegations regarding when the offenses occurred have not been conclusively proven to have been before Colony's policy became effective. Colony has not satisfied its burden to conclusively prove any exclusion applies to eliminate its defense duty.

### B. The Intellectual Property Exclusion Does Not Eliminate Colony's Defense Duty

Colony claims that it has no defense duty because the only claims against All Authentic were for trademark infringement which is not an offense and which is excluded by the policy's intellectual property exclusion. As discussed above, the NFL alleged facts upon which All Authentic was potentially liable for trade dress and slogan infringement, and that Colony does not dispute that the NFL claimed this

wrongful conduct was accomplished in All Authentic's advertisements. Colony's sole basis for denying its defense duty was that trademark infringement is not a specifically enumerated offense and is excluded from coverage. (Colony SUF ¶ 22)

The inaccuracy of Colony's position regarding the NFL fact allegations being included in an offense is more fully addressed above but reviewing the intellectual property exclusion in conjunction with the offenses sheds light on the absurdity of Colony's position. Colony's policy covers the offenses of "use of another's advertising idea in your advertisement" and "infringing upon another's copyright, trade dress or slogan in your advertisement." (Colony SUF ¶ 12) The intellectual property exclusion precludes coverage for " 'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement in your 'advertisement,' of copyright, trade dress or slogan." (Colony SUF ¶ 14)

Reviewing these two provisions together shows that Colony understood that trade dress and slogans could also be trademarks because they had to be carved out of the exclusion. Thus, even though the NFL alleged trademark infringement in All Authentic's advertisements, Colony was required to assess whether the alleged trademark infringement also included trade dress or slogan infringement. This assessment was required in order to determine whether the allegations triggered a defense under an offense and whether the intellectual property exclusion applied.

Colony failed to perform these assessments because Colony incorrectly stopped its analysis at the labeled causes of action. Colony never reviewed the actual fact allegations that trigger the defense duty. If Colony had done so, it would have seen that facts alleged by the NFL included those for trade dress and slogan infringement in All Authentic's advertisements which triggered Colony's defense duty for those offenses. Since the offenses that were triggered by the fact allegations are also excepted from application of the intellectual property exclusion, Colony's

analysis did not need to proceed any further and it should have defended All Authentic.

### C. The First Publication Exclusion Does Not Eliminate Colony's Defense Duty

Colony claims that application of the first publication exclusion excuses its defense duty. Colony bases this claim on the NFL's allegation that it first learned that All Authentic was offering counterfeit jerseys for sale on the internet in May 2005 and the Colony policy incepted on May 14, 2005. (Colony MPSJ at 14) Colony then jumps to the conclusion that All Authentic's allegedly infringing advertising activity necessarily first took place prior to the beginning of Colony's policy period. (Colony MPSJ at 14) Colony's assertion is unsupported by any evidence and is unfounded speculation.

It is undisputed that the NFL filed its complaint in October 2005 and that the complaint included allegations of numerous instances of allegedly wrongful conduct in All Authentic's advertisements. (SUF ¶¶ 3-5) There is nothing in the complaint that sets forth when the material at issue was first published. The material may have been first published the day the NFL discovered All Authentic's website, which could have been within Colony's policy period because its policy covered more than one-half of May 2005. The NFL complaint is silent as to whether new advertisements occurred between May 2005, when the NFL allegedly discovered infringing activity, and the October 2005 filing of the complaint. In *J. Lamb*, 100 Cal. App. 4th at 1038, the court addressed a similar exclusion as applied to allegations triggering the disparagement offense with similar uncertain dates.

> Atlantic Mutual's argument overlooks the significance of the fact that it is relying on a policy exclusion. The allegations of the Continental complaint **did not specify the date** of Lamb's first utterance of any disparagement. Thus, based upon those allegations

> alone, the *possibility* of coverage existed. That complaint was tendered to Atlantic Mutual. This was sufficient, at that moment, to create a *potential* for coverage and Atlantic Mutual's duty to defend arose. [Bold emphasis added]

The court of appeal went on to explain that the uncertainty regarding the date of the utterance, publication here, in the complaint created a potential for coverage that could not be eliminated prior to a judicial determination. *Id.* at 1041-42. ("Given the uncertainty as to the date(s) of Lamb's actions giving rise to Continental's claim, a *possibility* of coverage under the policies of both insurers exists and will continue to exist until the issue is *conclusively* determined by a final judicial decision."). Here, All Authentic settled with the NFL before a final judicial decision could be made and even where that decision is made it only impacts the duty to indemnify. A potential for coverage existed upon tender of the complaint to Colony and the first publication exclusion could only eliminate the defense duty prospectively[1] upon a final determination in the *NFL* Action, which determination was never made. Colony, therefore, had a duty to defend throughout the entirety of the *NFL* Action.

Other courts have explained that Colony had to prove that the same or substantially similar material was published before and after the Colony policy incepted. In *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1182 (2000), a California appellate court addressed this exclusion for the first time and used defamation law to determine how to interpret the exclusion.

> For this reason, we interpret the language of the Policy exclusion at issue as barring coverage of republication of any identifiably

---

[1] *Buss v. Superior Court*, 16 Cal.4th 35, 46 (1997)("If it is so extinguished, however, it is extinguished only prospectively and not retroactively: before, the insurer had a duty to defend; after, it does not have a duty to defend further.").

> defamatory "material" whenever the first publication of substantially the same material occurred before the inception of the policy period, without regard to whether or not the defamatory material is literally restated in precisely the same words.

In *Ringler*, the insurer defended the insured and investigated the facts underlying plaintiff's claims in order to determine if any new or different defamations were published after the effective date of the policy. *Id.* at 1174. Colony should have acted in the same manner.

The Seventh Circuit Court of Appeals was recently confronted with a case in which the insured was accused of misappropriating the advertising idea of another and broadcasting commercials using the advertising idea before one policy became effective. The Court found that commercials broadcast within that policy period which included the broad idea but also included different ideas were not precluded by the prior publication exclusion.

> At some point a difference between the republished version of an unlawful work and the original version would be so slight as to be immaterial. See *Ringler Associates Inc. v. Maryland Casualty Co.*, 80 Cal.App.4th 1165, 1181, 96 Cal.Rptr.2d 136, 150 (2000); *P.J. Noyes Co. v. American Motorists Ins. Co.*, 855 F.Supp. 492, 495 (D.N.H.1994). But that observation cannot save the insurer when the republication contains new matter that the plaintiff in the liability suit against the insured alleges as fresh wrongs. Wrench's complaint claims that Taco Bell stole the "basic idea" before October 7, 1997, and used it in its earliest commercials, which predated Zurich's coverage, but that it stole additional, subordinate but still protected, ideas as well and incorporated them into the later commercials.

*Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1073 (7th Cir. (Ill.) 2004).

Here, the NFL complaint does not provide sufficient specificity regarding the date the advertisements were first published in order for Colony's defense duty to be excused. Additionally, there are numerous allegations of different material being published in All Authentic's advertisements. While the "basic idea" might be showing football jerseys, the NFL included additional allegations that different color combinations, colors, names and slogans were included in the advertisements at issue. Without conclusive evidence of when each of the different advertisements were first published, Colony could not avoid its defense duty by relying on the exclusion.

## V. HUDSON IS ENTITLED TO CONTRIBUTION FROM COLONY

As demonstrated above, Colony owed All Authentic a defense in the *NFL* Action which Colony failed to provide. Hudson, on the other hand, defended All Authentic. California law is clear that a defending insurer is entitled to contribution from a co-insurer that failed to defend where it had the obligation to do so. *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 65 Cal.App.4th 1279, 1289 (1988).[2] Hudson and Colony were co-insurers that each owed a duty to defend All Authentic. Since Hudson defended All Authentic and Colony did not, Hudson is entitled to contribution from Colony in the amount of $477,149.80, which is one-half of the total defense expenses paid by Hudson - $954,299.60. (SUF ¶¶ 15 and 17)

## VI. COLONY DOES NOT DISPUTE HUDSON'S ENTITLEMENT TO PREJUDGMENT INTEREST

Hudson requests the court award prejudgment interest on the amount Colony should have paid to defend All Authentic. Colony does not dispute that Hudson is

---

[2] A full discussion of the doctrine of equitable contribution is in Hudson's Memorandum of Points and Authorities in Support of Its Motion for Partial Summary Judgment at pages 8 to 13.

entitled to prejudgment interest on the $477,149.80 owed by Colony. Recently, a California appellate court reaffirmed that an insurer may recover prejudgment interest from another insurer in an action such as this. *Royal Indem. Co. v. Hartford Ins. Co. of Midwest*, No. B196406, 2008 WL 2009747, *8 (Cal.App. 2nd Dist. May 12, 2008) ("In a dispute between two insurance companies as to who is liable for coverage, prejudgment interest may properly be awarded. (*Fireman's Fund Ins. Co. v. Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1173-1174; *Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1305-1307.)"). Colony owes Hudson $87,225.75 in prejudgment interest through June 23, 2008 and $261.45 in prejudgment interest per day thereafter.

## VII. CONCLUSION

Colony owed a defense to All Authentic in the *NFL* Action because the NFL alleged facts for which All Authentic could be liable for trade dress or slogan infringement in its advertisements. Hudson paid for the entire defense of All Authentic when Colony also owed a defense, entitling Hudson to equitable contribution from Colony. Hudson does not speculate about the claims asserted against All Authentic as Hudson's defense and Colony's defense are both predicated on the facts actually alleged against All Authentic. Colony chose to ignore the facts alleged and focused on the labels attached to the causes of action, contrary to California insurance law. Colony cannot be allowed to benefit from its incorrect analysis and must pay Hudson one-half of the defense expenses paid and prejudgment interest.

DATED: June 2, 2008

M. Cath. Reid (for)

Eric R. Little, Esq.
LITTLE REID & KARZAI LLP
Attorneys for Plaintiff Hudson Insurance Company