**LITTLE REID & KARZAI LLP**
Eric Little, Bar No. 169021
M. Catherine Reid, Bar No. 156358
3333 Michelson Drive, Suite 310
Irvine, CA 92612
Telephone: (949) 333-1699
Facsimile: (949) 333-1697

**Attorneys for:** Plaintiff
Hudson Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-RIVERSIDE

| | |
|---|---|
| HUDSON INSURANCE COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>COLONY INSURANCE COMPANY, a Virginia Corporation,<br><br>Defendant. | Case No.:EDCV 07-01497-SGL (OPx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO COLONY'S OPPOSITION TO HUDSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## TABLE OF CONTENTS


I. SUMMARY OF ARGUMENT .......... 2

II. COLONY CONFLATES SPECULATION WITH POTENTIALITY .......... 5

A. Hudson Has Shown a Potential for Coverage .......... 5

B. Claims of Trade Dress and Slogan Infringement Were Alleged .......... 6

1. Trade Dress May be Protected Under Trademark Law .......... 6

2. The NFL Alleged Slogan Infringement .......... 10

III. THE "FIRST PUBLICATION" EXCLUSION DOES NOT ELIMINATE COLONY'S DEFENSE DUTY .......... 12

IV. COLONY DOES NOT DISPUTE HUDSON'S ENTITLEMENT TO PREJUDGMENT INTEREST .......... 13

V. CONCLUSION .......... 13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed. 2d 182 (1986)....................................7, 8

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.*,
329 F.3d 546 (6th Cir. (Mich.) 2003)..............................................................11,12

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
454 F.3d 108 (2nd Cir. (N.Y.) 2006) ...............................................................8, 9

*Vision Sports, Inc. v. Melville Corp.*,
888 F.2d 609 (9th Cir. (Cal) 1989)..............................................................9, 10

### STATE CASES

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*,
100 Cal.App.4th 1017 (2002) ..........................................................................12

*Gray v. Zurich Ins. Co.*,
65 Cal. 2d 263 (1966) ......................................................................................6

*Montrose Chemical Corp. v. Superior Court*,
6 Cal.4th 287 (1993) ....................................................................................5,13

*Palmer v. Truck Ins. Exchange*,
21 Cal.4th 1109 (1999) ..............................................................................10, 12

## I. SUMMARY OF ARGUMENT

Hudson Insurance Company ("Hudson") submits this memorandum of points and authorities in Reply to Colony Insurance Company's ("Colony") Opposition to Hudson's Motion for Partial Summary Judgment ("Colony Opp."). Hudson incorporates into its Reply all arguments submitted in its previously submitted Opposition to Colony's Motion for Partial Summary Judgment. Colony owed a defense because the facts alleged in the NFL complaint include allegations of trade dress and slogan infringement for which All Authentic was potentially liable. Colony did not defend All Authentic but Hudson did. Hudson is owed one-half the amount it paid in defending All Authentic. Colony does not dispute that Hudson is also entitled to prejudgment interest.

The NFL complaint alleged facts that if proven could result in a finding of liability against All Authentic for trade dress or slogan infringement in its advertisements. Colony, instead of determining what All Authentic's potential liability was based upon the facts alleged in the NFL complaint, relies entirely on the labeled causes of action. (Colony Opp. at 3) At no time does Colony consider the fact that allegations of trademark infringement might also include potential trade dress or slogan infringement. Colony's analysis is contrary to California coverage law which requires that an insurer determine its defense duty based upon the allegations pled by the plaintiff in the underlying action and not the label placed on the cause of action.

Hudson relies entirely on the NFL complaint allegations in showing that Colony owed a duty to defend All Authentic and does not speculate about unpled facts.[1] Specifically, the NFL alleged:

18. Exhibit B **displays an image of a Counterfeit Jersey offered**

---

[1]See Hudson's Opposition to Colony's Motion for Partial Summary Judgment at pages 13-18 for a full discussion of speculation on unpled facts.

**for sale on www.allauthentic.com** as a "Steel Curtain Custom Limited Edition Steelers Jersey" on the left, next to the authentic NFL Uniform Design Jersey on the right. The **Counterfeit Jersey reads "Steel Curtain"** across the back and bears the numbers of four Pittsburgh Steelers players using the same style of numbering and lettering as appears on the authentic Pittsburgh Steelers' NFL Uniform Design Jersey. The Steelers have a strong common law rights in the mark "Steel Curtain" and own a state registration for the mark "Steel Curtain . . . Pittsburgh Steelers." The **Counterfeit Jersey features the same black and gold color combination and striping** as the official Pittsburgh Steelers' NFL Uniform Design Jerseys.

19. Exhibit C **displays an image of Counterfeit Jersey offered for sale on www.allauthentic.com** as "Joe Montana Signed Throwback 49ers Jersey" . . . The Counterfeit Jersey reads "Montana" across the back and bears the number "16" using the **same style of numbering and lettering as appears on the authentic San Francisco 49ers NFL Uniform Design Jerseys**. The Counterfeit Jersey features the same red and white color combination and striping as the official San Francisco 49ers NFL Uniform Design Jerseys.

20. Exhibit D displays **an image of a Counterfeit Jersey offered for sale on www.allauthentic.com** as a "Joe Klecko Throwback Tribute Jets & Patriots Style Combo Jersey" . . . The front of the Counterfeit Jersey bears the number "90" using the **same style of numbering as appears on the**

**authentic Patriots NFL Uniform Design Jerseys**. The Counterfeit Jersey reads "Kleck" across the back and bears the number "73" using the same style of numbering and lettering as appears on the authentic New York Jets NFL Uniform Design Jerseys. The **Counterfeit Jersey features the same green and white color combination as the official New York Jets NFL Uniform Design Jerseys** on one side and the same blue and silver combination as the official New England Patriots NFL Uniform Design Jerseys on the other side.

. . . .

25. . . . the Counterfeit Jerseys are so close as to be identical or substantially indistinguishable from officially licensed jerseys currently sold by NFL Properties licensees . . .

26. Defendant has not been granted permission or authorization by NFL Properties, the NFL or its Member Clubs to use any NFL Marks in connection with jerseys.

SUF ¶ 7, emphasis added.

Based on the allegations in the NFL complaint and the policy terms, Colony owed a defense to All Authentic. Hudson has never speculated about unpled facts, unlike Colony which relies exclusively on speculation in asserting its "first publication" exclusion. Colony is not relieved of its defense duty by applying the exclusion and Colony has not proven so by clear and undisputed evidence.

Because Colony failed and refused to defend All Authentic, Hudson paid for the entirety of All Authentic's defense – an amount Colony owed equally. Hudson is entitled to damages in the amount paid by Hudson that should have been paid by Colony. Colony owes Hudson $477,149.80 in principal plus prejudgment interest in

the amount of $87,225.75 through June 23, 2008 with interest accruing at $261.45 per day. (SUF ¶¶ 17, 18 and 20)

## II. COLONY CONFLATES SPECULATION WITH POTENTIALITY

### A. Hudson Has Shown a Potential for Coverage

Colony erroneously states that "Hudson's contention that the NFL's factual allegations 'could have' resulted in All Authentic's liability for trade dress infringement is nothing but sheer speculation." (Colony Opp. at 19) Hudson's statement is settled California law. The California Supreme Court explained in *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993):

> "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal **a possibility that the claim may be covered** by the policy. (*Gray*, supra, 65 Cal.2d at p. 276.)" (*Horace Mann, supra*, 4 Cal.4th at p. 1081.) As one Court of Appeal has put it, "[f]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. [Citation.] Hence, the duty 'may exist even where coverage is in doubt and ultimately does not develop.' [Citation.]" (*Saylin v. California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 263 [224 Cal.Rptr. 493].)[Emphasis added]

Colony's continued reference to the labeled causes of action asserted by the NFL fails to comport with California's requirement that an insurer determine its defense duty based upon the factual allegations in the complaint. Colony attempts to justify its wrongful analysis by showing that the NFL's attorneys know that they can label a cause of action trade dress infringement or slogan infringement. (Colony

Opp. at 18-19) California courts do not allow a plaintiff's choice of causes of action to control an insurer's defense duty. The California Supreme Court explained in *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276-77 (1966):

> Defendant cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. Although an earlier decision reads: "In determining whether or not the appellant was bound to defend ... the language of its contract must first be looked to, and next, the allegations of the complaints ..."(*Lamb v. Belt Casualty Co., supra*, 3 Cal.App.2d 624, 630), courts do not examine only the pleaded word but the potential liability created by the suit. . . .
>
> Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy.

Hudson has shown that the facts alleged by the NFL revealed the possibility that All Authentic might be liable for trade dress or slogan infringement. Colony, instead of assessing whether All Authentic faced potential liability for trade dress or slogan infringement, constructed a formal fortress of the NFL's pleadings and remains behind the walls it constructed.

**B. Claims of Trade Dress and Slogan Infringement Were Alleged[2]**

**1. Trade Dress May be Protected Under Trademark Law**

The NFL Complaint alleged that All Authentic advertised, on the internet, its

[2]For a fuller discussion, see Hudson's Opposition to Colony's Motion for Partial Summary Judgment at pages 7-13.

products which were virtually identical in appearance to the allegedly protected products of the NFL and Colony admits this. (SUF ¶ 6 and Colony Opp. at 3) Colony seems to claim that the NFL was precluded from seeking damages because of trade dress infringement because it labeled the cause of action as trademark infringement. Colony ignores the fact that the NFL's assertion of trademark infringement included allegations regarding the overall appearance of All Authentic's products causing confusion which could have resulted in liability for trade dress infringement. Moreover, Colony has not shown that trade dress cannot be protected under trademark law. This is likely because Colony's position is not supported by the law.

The United States Supreme Court recently discussed actions under the Lanham Act for trade dress infringement involving both registered and unregistered marks. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209, 120 S.Ct. 1339, 1342, 146 L.Ed 2d 182 (2000)(emphasis added).

> The breadth of the **definition of marks registrable** under § 2, and of the confusion-producing elements recited as actionable by § 43(a), has **been held to embrace** not just word marks, such as "Nike," and symbol marks, such as Nike's "swoosh" symbol, but also **"trade dress"**-a category that originally included only the packaging, or "dressing," of a product, but in recent years has been expanded by many Courts of Appeals to encompass the design of a product. . . . These courts have assumed, often without discussion, that trade dress constitutes a "symbol" or "device" for purposes of the relevant sections, and we conclude likewise.

The Court went on to explain that the same test applies in determining the distinctiveness of registered or unregistered trade dress.

> Nothing in § 43(a) explicitly requires a producer to show that its trade

> dress is distinctive, but courts have universally imposed that requirement, since without distinctiveness the trade dress would not "cause confusion ... as to the origin, sponsorship, or approval of [the] goods," as the section requires. Distinctiveness is, moreover, an explicit prerequisite for registration of trade dress under § 2, and "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (citations omitted).

*Id.* at 210. Here, the NFL asserted infringement of registered marks that included the design and color of its jerseys, characteristics that are typically considered trade dress. The Supreme Court has made clear that trade dress is registrable under the pertinent trademark registration statute. Thus, the NFL's assertion of infringement of its marks that included the design and color of its jersey was an assertion of infringement of its trade dress and All Authentic faced potential liability for that claim.

Colony's discussion of trademark and trade dress cases does not negate the fact allegations asserted by the NFL. Colony stretches credulity by ignoring the NFL's allegations regarding the overall appearance of its products and All Authentic's alleged infringement. The NFL alleged infringement under both sections 32 and 43 of the Lanham Act. Section 32 protects registered trademarks against infringement while section 43 protects against infringement of unregistered trademarks and trade dress. In *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114-15 (2nd Cir. (N.Y.) 2006), the court explained:

> Section 43(a) of the Lanham Act prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof ...

> which ... is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods...." 15 U.S.C. § 1125(a). This section protects from infringement unregistered trademarks, *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir.2000), as well as trade dress and product design, see *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).

The NFL alleged trademark infringement under both sections in order to assure protection of its registered and unregistered marks. Had the NFL's marks been found to erroneously include the color combinations and lettering, the NFL could still prove infringement of unregistered trade dress.

Unlike Louis Vuitton Malletier, the NFL did not seek to simply protect its logo. The NFL sought to protect the overall appearance of its jerseys. Had Vuitton sought to protect the overall appearance of its handbags, it would have asserted a trade dress infringement claim. *Id.* at 115. The NFL did seek to protect the overall look of its jerseys which included the color schemes and lettering. This is a claim for trade dress infringement whether registered pursuant to trademark law or not.

Similarly in *Vision Sports, Inc. v. Melville Corp.*, 888 F. 2d 609, 613 (9th Cir. (Cal.) 1989), the court discussed the distinction between trademark and trade dress. "In trademark law, therefore, it is only the exclusive symbol characterized as a 'trademark' which is juxtaposed against another's usage to determine whether or not the two used by two sellers is likely to confuse consumers." The court went on to explain why trade dress infringement was also sought by the plaintiff.

> Thus, to the extent that Vision's cause of action focuses upon the look and styling of the clothing (including the fabric pattern), along with the color scheme and graphic display embodied in the VSW logo, it is a trade dress claim. . . .

> Vision asserts *both* trademark and trade dress interests in its logo.

*Id.* (emphasis in original). Here, the NFL asserted both trademark and trade dress interests in its jerseys. And, the NFL recognized that its trademark interests might be found to not include the design and color schemes of its jerseys and that is why the section 43 claim was made.

**2. The NFL Alleged Slogan Infringement**

The NFL also claimed that All Authentic used slogans that belonged to others in its advertisements. (SUF ¶ 7) Colony's assertion that the NFL did not use the word "slogan" in its complaint is irrelevant. Colony would have this Court believe that the facts alleged are irrelevant while the label attached is controlling. Not only is this contrary to California coverage law but would result in a labeled claim being dismissed if unsupported by fact allegations. The NFL alleged All Authentic's use of "Steel Curtain" violated common law rights allegedly held by one of the member clubs. (SUF ¶ 7) Clearly, the NFL believed "Steel Curtain" was a phrase which it alone could use to advertise its products and that All Authentic improperly used the phrase in its advertisements. This is slogan infringement.

In *Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 1114 (1999), the insurer defended the case in a timely manner, thus the question in that case was whether the damages were actually covered by the insurance policy, not whether they were possibly covered. And, slogan infringement, while alleged in the complaint, was not a damage for which the jury found Palmer liable. *Id.* at 1120. It appears that the insurer in *Palmer* understood its insured faced potential liability for slogan infringement and thus defended Palmer. The insurer did not have to indemnify Palmer on the slogan infringement claim because the jury did not find liability for wrongful use of the slogan at issue. *Id.* at 1120, n.9.

Colony completely misconstrues the allegations in the NFL complaint in asserting there is no potential claim for slogan infringement in All Authentic's

advertising. As demonstrated above, the NFL claimed one of its members owned rights in the phrase "Steel Curtain" and that All Authentic infringed on those rights by offering for sale on its website a jersey with "Steel Curtain" appearing across the back. (SUF ¶ 7) "Advertisement" as defined in the Colony policy includes material placed on the internet, including the part of a website that is about All Authentic's products. (Colony SUF ¶ 13) There can be no other purpose for having the phrase "Steel Curtain" on the products but to grab the attention of customers who wish to purchase 1970's era Pittsburgh Steelers jerseys.

Colony's attempt to distinguish *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546 (6th Cir. (Mich.) 2003) fails. Colony does not identify any difference between Michigan and California law in claiming *Zen Design* is of no precedential value. Moreover, *Zen Design* is the leading case in the country discussing the duty to defend slogan infringement and is provided as persuasive authority. Colony's assertion that the facts are different here because the court found that one of the trademarks was the name of the product while the other was a "catchword or catch phrase" refuses to recognize the analysis provided by the court. (Colony Opp. at 15)

The *Zen Design* Court first looked to the policy and finding the policy did not define "slogan" resorted to other sources.

> Slogan is defined in the dictionary as a 'distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase.' Random House Unabridged Dictionary 1800 (2d ed.1993). 'Although in the proper context ... a slogan[ ] can serve as a trademark ... [a] slogan is certainly not by definition a trademark.' *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 342 (4th Cir.2001).

*Id.* at 556.

The *Zen Design* Court ruled that "The Wearable Light" was a slogan that ASP claimed Zen Design infringed in its advertising, even under the definition adopted in *Palmer*.

> "The Wearable Light" can easily be construed as a "catchword or catch phrase" used by the manufacturer to promote its product. See Random House Unabridged Dictionary 1800 (2d ed.1993). Relying on other common definitions of slogan, "The Wearable Light," as used in the ASP advertisement also can be considered "[a] brief attention-getting phrase used in advertising or promotion." *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1120, 90 Cal.Rptr.2d 647, 988 P.2d 568 (1999).
>
> ASP's assertions of ownership over the phrase "The Wearable Light" together with Zen's alleged use of the same phrase in connection with its LED flashlights are arguably allegations of slogan infringement.

*Id.* at 556-557. Similarly here, the NFL claims trademark rights in "Steel Curtain" as a catch phrase or brief attention-getting phrase. It is not simply a word used in a slogan as was the case in *Palmer*. All Authentic was potentially liable for slogan infringement based upon the facts alleged by the NFL.

## III. THE "FIRST PUBLICATION" EXCLUSION DOES NOT ELIMINATE COLONY'S DEFENSE DUTY

"An insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1039 (2002). Colony asserts only that it does not owe a defense based upon application of its first publication exclusion, conceding that the intellectual property exclusion does not apply. Colony has provided no evidence, let alone conclusive evidence, that the

exclusion applies in all possible worlds.[3]

Colony bases its entire argument on sheer speculation. Colony speculates that All Authentic must have first "published" the allegedly infringing jerseys on its website prior to May 2005 because the NFL first became aware of All Authentic's website in May 2005. Nowhere does Colony provide any actual evidence that All Authentic published allegedly infringing material on its website before May 2005 or before the Colony policy incepted. There is a possibility that All Authentic first published the material at issue on its website on May 20, 2005 (or some other date after the Colony policy incepted). Had Colony defended the *NFL* Action, it could have investigated and developed facts that would have allowed it to negate its defense duty, if those facts actually existed. *Montrose*, 6 Cal. 4th at 298-99. Instead, Colony chose to abandon its insured.

## IV. COLONY DOES NOT DISPUTE HUDSON'S ENTITLEMENT TO PREJUDGMENT INTEREST

Colony does not dispute that Hudson is entitled to prejudgment interest. Colony owes $477,149.80 to Hudson for defense expenses paid in defending All Authentic. Since Colony does not dispute Hudson's claim, Colony owes Hudson $87,225.75 in prejudgment interest through June 23, 2008 and $261.45 in prejudgment interest per day thereafter.

## V. CONCLUSION

Colony owed a defense to All Authentic in the *NFL* Action because the NFL alleged facts for which All Authentic could be liable for trade dress or slogan infringement in its advertisements. Hudson paid for the entire defense of All Authentic when Colony also owed a defense, entitling Hudson to equitable contribution from Colony. Hudson does not speculate about the claims asserted

---

[3]For a more comprehensive discussion of the exclusions, see Hudson's Opposition to Colony's Motion for Partial Summary Judgment at pages 18-23.

against All Authentic. Colony's defense duty and Hudson's claim rely solely on the facts actually alleged against All Authentic. Colony cannot escape its defense obligation by relying on the labeled causes of action and ignoring the facts alleged. Colony's defense duty was not negated by the "first publication" exclusion as there is no evidence supporting Colony's speculation that All Authentic published allegedly infringing material on its website before the Colony policy incepted. Colony owes Hudson one-half the defense expenses and prejudgment interest.

DATED: June 16, 2008

Eric R. Little, Esq.
M. Catherine Reid, Esq.
LITTLE REID & KARZAI LLP
Attorneys for Plaintiff Hudson Insurance Company